[Crim. No. 22812. Aug. 18, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
JUAN BELMONTES, Defendant and Appellant.

338

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Harvey R. Zall, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, and John K. Van de Kamp, Attorneys General, Robert H. Philibosian and Daniel J. Kremer, Chief Assistant Attorneys General, Arnold O. Overoye, Assistant Attorney General, Roger E. Venturi and Anthony L. Dicce, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**KAUS, J.—**

### I. *The Issues*

We attempt to answer certain questions that arise when a defendant has been convicted of sex offenses listed in Penal Code section 667.6, subdivision (c).[1] These are: (1) does the trial court have discretion not to apply the

---

[1]Unless otherwise noted, all statutory references are to the Penal Code.

provisions of that subdivision and to follow the general sentencing procedures of section 1170.1; (2) if there is such discretion, are the sentencing criteria of the Judicial Council adequate guidelines for its exercise; and (3) must the court give reasons which expressly address the decision to sentence under the more severe provisions of section 667.6, subdivision (c). Before reaching these major issues, we shall deal with a minor problem concerning the admissibility of certain evidence.

## II. *Facts*

Defendant was convicted of kidnaping, rape, oral copulation and sodomy based on an episode involving Lupe V. Defendant called Lupe one evening in October 1980 and told her that his brother Lorenzo, whom she had dated, was hurt. He said he would pick her up and take her to Lorenzo. He soon arrived at her house and Lupe got in his car.

Defendant drove out of town to a deserted area and stopped near a railroad trestle. He picked up a crowbar, came around to the passenger side of the car where Lupe was sitting and ordered her out. He tried to kiss her, but she pushed him away and ran off. Defendant caught her by the hair, ordered her to the back seat of the car and told her to take her clothes off. He orally copulated her and forced her to orally copulate him.

Defendant then drove to a more secluded spot where he again threatened Lupe if she did not cooperate. He raped her, sodomized her and again forced her to orally copulate him. As he was driving Lupe home, defendant demanded that she give him $1,000 or he would force her to act as a prostitute at a farm labor camp. Lupe went in her house, got $20 and gave it to defendant who then left. Lupe said she gave him the money to get him to leave; there were only women in her house, and she was afraid defendant would come in.

Lupe told her sister and her mother about the attack after defendant left. They took her to the hospital and reported the attack to the police. At the hospital Lupe was hysterical most of the time. She had bruises and scrapes on her palm and both knees, but no other significant physical injuries.

The defense was consent. Defendant testified that Lupe agreed to have sex with him in return for his promise to help her persuade his brother to resume his relationship with her. Lupe voluntarily gave him the $20 after he mentioned on the way home that he needed money. She reminded him about his promise, and defendant said he had decided he would not help break up his brother's current relationship with someone else. Lupe became angry and told him he would be sorry.

### III. *Exclusion of Evidence*

■    Defendant contends that the trial court erred in precluding him from introducing evidence that his brother had had sexual intercourse with Lupe at least six times in the past few months. When the subject first arose, before the People had even rested, defendant stated he wanted to use the evidence to impeach Lupe's credibility regarding extrajudicial statements she may have made earlier about having been a virgin at the time of the episode with defendant; he also asserted its relevance to show consent to the oral copulation and sodomy charges. The court found the evidence irrelevant as to virginity since no evidence had been presented on that subject. The court also found it irrelevant as to consent. It further ruled that even if the evidence were relevant, it would not be admissible under Evidence Code section 352 because its probative value was outweighed by its prejudicial effect.

At the time of defendant's trial, Evidence Code section 1103 precluded admission of this evidence only in prosecutions involving rape. The statute has since been amended to preclude admission of a victim's prior sexual activity with others to show consent as to oral copulation and sodomy as well. "The relevance of past sexual conduct of the alleged victim of the rape with persons other than the defendant to the issue of her consent to a particular act of sexual intercourse with the defendant is slight at best." (*People* v. *Blackburn* (1976) 56 Cal.App.3d 685, 690 [128 Cal.Rptr. 864].) Here the relevance was even more attenuated since defendant sought to admit acts of the victim's prior sexual intercourse with another person on the issue of consent to the sodomy and oral copulation. No abuse of discretion appears in the trial court's ruling under Evidence Code section 352.

Immediately after that ruling defendant asserted another theory of relevance, stating: "It's our position that the victim was trying . . . to get back together with Lorenzo, and that, of course, would show the very close relationship with Lorenzo and her which would be corroborative evidence to show that this was what was discussed between . . . the Defendant and the victim Lupe." This statement was made before defendant had testified or presented any other evidence that established the exact nature of his defense. The court again ruled against admission of the evidence but stated that the motion could be renewed if there were further evidence to support admissibility of the evidence. Defendant did not renew the motion.

It is obvious that the court did not err in denying admission of the evidence when it was offered. Its relevance to defendant's defense was not yet shown, and defendant did not avail himself of the opportunity to renew the motion after the exact nature of his defense had been made clear.

## IV. *Sentencing Issues*

As stated, defendant was convicted of kidnaping (§ 207), rape (§ 261, subds. 2, 3), oral copulation (§ 288a, subd. (c)), and sodomy (§ 286, subd. (c)). The trial court sentenced him to state prison for the middle base term of five years on the kidnaping conviction. Next, the court imposed three fully consecutive six-year sentences on the rape, sodomy and oral copulation convictions. Finally, it imposed a consecutive 1-year enhancement for a prior felony conviction, for a total of 24 years.

In imposing the fully consecutive sentences on the sex offense convictions, the trial court apparently relied on section 667.6, subdivision (c). Although the court never specifically indicated it was proceeding under section 667.6, subdivision (c), that was the recommendation in the probation report which was before the court and was discussed at length.

Before imposing sentence, the court recited aggravating and mitigating factors. As aggravating factors it mentioned the violence and cruelty involved in the crimes, the vulnerability and fear of the victim, the threats made against her, the deliberation and premeditation involved in luring her into the car, and defendant's lack of satisfactory performance on parole. In mitigation the court noted that defendant suffers from a "personality defect" and had a drinking problem.[2] The court then imposed sentence with no further discussion of the possible range of sentences.

---

[2] The full text of the court's statement is as follows: "The Jury found beyond a reasonable doubt that the Defendant had committed the offenses with which he was charged and the Court, of course, heard the evidence and notes that the crime itself involved violence. It involved cruelty, total lack of consideration by the Defendant for a fellow human being. [¶] The Defendant did have available to him a knife. Threatening remarks were made by the Defendant to the victim. [¶] The victim was a female and was vulnerable to the whims and wishes of the Defendant. [¶] She was reduced to fear. She was not capable of adequately defending herself or protecting herself. [¶] Additionally, such conduct as to conjure up a false story to lure her away from her home and safety, reflects obvious deliberation and premeditation. [¶] Because of the Defendant's acquaintanceship with the victim, and the brother, his brother's acquaintanceship with the victim, it would appear that there was a certain amount of trust and confidence on the part of the victim, which was reposed in the Defendant. [¶] He violated that trust and confidence that was really his. [¶] Now the Defendant himself has demonstrated that he does not perform well on parole or under supervision; that he has been brought back by the Board of Prison Terms, given additional time, additional supervision. I don't really see that his offenses have increased in severity, save and except for the present offense, which is heinous. [¶] Now the court has taken into consideration factors in mitigation. The Defendant apparently suffers from some sort of a personality defect and of course, society does not expect a person suffering from a personality defect to perform in the same manner as one that doesn't have one. That's a serious factor that the Court must take into consideration. [¶] Additionally, it would appear that the Defendant suffers from a slight form perhaps of alcoholism and is unable to control his drinking. [¶] The Court notes that at the time of the alleged incident, it does not appear nor did the Jury find, that in any respect that the alcohol was an excuse. [¶] However, it is one of the factors that the Court takes in mitigation in consideration. Other factors not necessarily enumerated were also considered in mitigation. [¶] So for those reasons, the Court is sentencing the Defendant to State Prison."

## A. *Interpretation of Section 667.6, Subdivision (c)*

In addressing defendant's claims of sentencing error, the first question to consider is the relationship between section 667.6, subdivision (c) and section 1170.1. In particular, we must decide whether section 667.6, subdivision (c) provides merely a discretionary sentencing alternative to the general and more lenient consecutive sentencing provisions of section 1170.1.

Section 667.6, subdivision (c) was enacted as part of chapter 944 of the 1979 Statutes, an extensive revision of legislation concerning sex crimes. (See *Selected 1979 Cal. Legislation,* 11 Pacific L.J. 429.)[3] Subdivision (c) provides: "In lieu of the term provided in Section 1170.1, a full, separate, and consecutive term *may* be imposed for each violation of subdivision (2) or (3) of Section 261, Section 264.1, subdivision (b) of Section 288, Section 289, or of committing sodomy or oral copulation in violation of Section 286 or 288a by force, violence, duress, menace or threat of great bodily harm whether or not the crimes were committed during a single transaction. *If* such term is imposed consecutively pursuant to this subdivision, it shall be served consecutively to any other term of imprisonment, and shall commence from the time such person would otherwise have been released from imprisonment. Such term shall not be included in any determination pursuant to Section 1170.1. Any other term imposed subsequent to such term shall not be merged therein but shall commence at the time such person would otherwise have been released from prison." (Italics added.)

Subdivision (d) of section 667.6 is similar to subdivision (c) in all respects except that it provides: "A full, separate, and consecutive term *shall* be served for each violation" of the specified forcible sex offense "if such crimes involve separate victims or involve the same victim on separate occasions." (Italics added.)

Section 1170.1 sets forth the general sentencing scheme for multiple convictions. Subdivision (a) provides: "Except as provided in subdivision (c) [pertaining to offenses committed while in prison] and subject to section 654, when any person is convicted of two or more felonies . . . and a consecutive term of imprisonment is imposed under Sections 669 and 1170, the aggregate term of imprisonment for all such convictions shall be the sum of the principal term, the subordinate term and any additional term imposed pursuant to section 667.5, 667.6 or 12022.1. The principal term shall consist of the greatest term of imprisonment imposed by the court for any of the crimes, including any enhancements imposed pursuant to sections

---

[3]Subdivisions (a) and (b) of section 667.6 provide lengthy enhancements for persons convicted of a forcible sex offense if they have prior convictions of such offenses. Those subdivisions are not applicable here.

12022, 12022.3, 12022.5, 12022.6, 12022.7 or 12022.8. The subordinate term for each consecutive offense which is not a 'violent felony' as defined in subdivision (c) of Section 667.5 shall consist of one-third of the middle term . . . for which a consecutive term of imprisonment is imposed, and shall exclude any enhancements . . . . The subordinate term for each consecutive offense which is a 'violent felony' as defined in subdivision (c) of Section 667.5 . . . shall consist of one-third of the middle term of imprisonment prescribed for each other such felony conviction for which a consecutive term of imprisonment is imposed, and shall include one-third of any enhancements imposed pursuant to Section 12022, 12022.5 or 12022.7.''

Section 1170.1 contains other provisions regarding the computation and imposition of enhancements. The only additional part that specifically refers to sentencing for forcible sex offenses is subdivision (i), which provides that for violations of the offenses listed in section 667.6, "the number of enhancements which may be imposed shall not be limited, regardless of whether such enhancements are pursuant to this or some other section of law. Each of such enhancements shall be a full and separately served enhancement and shall not be merged with any term or with any other enhancement."[4]

█ Section 667.6, subdivision (c) is obviously a much harsher sentencing measure than section 1170.1. Defendant contends that the trial court has discretion to choose between the two provisions in sentencing on the sex offenses. The People disagree. They assert that section 667.6 constitutes a new and separate sentencing scheme whereby terms for offenses listed in subdivision (c) are to be computed separately and then added to the terms calculated for other offenses pursuant to section 1170.1. The "in lieu of" language of section 667.6, subdivision (c), according to the People, inexorably directs the sentencing court away from the principal/subordinate scheme of section 1170.1. The People further contend that the word "may" in subdivision (c) merely permits the court to sentence to concurrent rather than consecutive sentences. The People's position is supported by *People v. Ottombrino* (1982) 127 Cal.App.3d 574 [179 Cal.Rptr. 676].

Defendant claims that *Ottombrino* is incorrect. He argues that the word "may" gives the court the option to choose between sentencing under section 1170.1 or section 667.6, subdivision (c). He points out that it would be illogical to interpret the word "may" as allowing only a choice between full concurrent or full consecutive sentences, since that would result in man-

---

[4]Until 1982 amendments to section 1170.1, subdivision (i) had been labelled subdivision (h).

datory concurrent sentences if the court decided against full term consecutive sentences, depriving it of the option of imposing the normal consecutive term of section 1170.1—an inflexible leniency that the Legislature surely did not intend when it enacted the harsher sentencing provisions for forcible sex offenses.

Defendant's position is the more logical one. Certainly nothing in section 1170.1 presents an obstacle to its application to sex offenses listed in section 667.6, subdivision (c). In fact, there is compelling proof that the Legislature visualizes continued utilization of section 1170.1 for such offenses. As part of the same legislation which enacted section 667.6—chapter 944 of the Statutes of 1979—the Legislature created two new enhancements—sections 12022.3 and 12022.8—which apply almost exclusively to sex crimes listed in section 667.6; yet it added the two sections to the enhancements listed in subdivision (a) of section 1170.1. (Stats. 1979, ch. 944, §§ 12, 17, 18.) Even more conclusive is the fact that the same legislation added subdivision (h)—now (i)—to section 1170.1, which, as noted, deals with the imposition of enhancements to violations of the very same sex crimes. Neither of these additions to section 1170.1 would make any sense if section 667.6 were the exclusive means for punishing violations of those offenses. Moreover, even if sections 667.6, subdivision (c), and 1170.1 were ambiguous as the People assert, under settled rules of statutory construction we would be bound to resolve the ambiguity in favor of defendant—and therefore to allow discretion to choose between the two schemes. (See *People* v. *King* (1978) 22 Cal.3d 12, 23, [148 Cal.Rptr. 409, 582 P.2d 1000]; *People* v. *Davis* (1981) 29 Cal.3d 814, 828 [176 Cal.Rptr. 521, 633 P.2d 186].) *People* v. *Ottombrino, supra,* 127 Cal.App.3d 574 is disapproved to the extent it is inconsistent with this opinion.

■ We part company with defendant, however, on the question of the scope of the trial court's options in applying the alternative sentences authorized by sections 1170.1 and 667.6, subdivision (c). Defendant asserts that if a listed sex offense carries the longest term of any of the offenses of which the defendant has been convicted, then that sex offense *must* be designated as the principal term under section 1170.1. Under this approach, a consecutive sentence for any offense not listed in section 667.6, subdivision (c) would necessarily be designated as a subordinate term, and the court would have discretion to sentence under section 667.6, subdivision (c) only as to additional sex offenses. Defendant suggests that his proposed interpretation follows because the first, i.e., "principal," term is not imposed "in lieu" of a normal consecutive term under section 1170.1.

We find nothing, however, in the legislative history or language of section 667.6, subdivision (c) that persuasively supports such an interpretation. The

entire content of that provision points towards its being a separate and alternative sentencing scheme for offenses that fall within its ambit. Thus, we conclude that if a defendant is convicted of both sex offenses and nonsex offenses, a trial court may properly designate the longest nonsex offense as the principal term and may treat all of the sex offenses under section 667.6, subdivision (c).

■ In exercising its sentencing discretion, the court should make an individual determination as to each sex offense. Thus, a court could choose to have a sex offense serve as the principal term if it carried the longest sentence and to treat all other offenses—regardless of whether they include sex offenses listed in section 667.6, subdivision (c)—as subordinate terms under section 1170.1. A court could alternatively choose to treat some of the sex offenses under the principal/subordinate scheme of section 1170.1, while imposing fully consecutive sentences on others under section 667.6, subdivision (c). The computations under sections 1170.1 and 667.6, subdivision (c) are to be done separately; the total of the section 667.6 computation would then be added to the section 1170.1 total.

## B. *Sentencing Criteria*

■ Defendant contends that the lack of a Judicial Council rule addressed specifically to criteria for choosing to sentence under section 667.6, subdivision (c) invalidates the sentence imposed in his case. He relies on section 1170.3, which directs the Judicial Council to promote uniformity in sentencing by adopting rules providing criteria for courts to use in deciding to: "(1) Grant or deny probation. (2) Impose the lower or upper prison term. (3) Impose concurrent or consecutive sentences. (4) Consider an additional sentence for prior prison terms. (5) Impose an additional sentence for being armed with a deadly weapon, using a firearm, an excessive taking or damage, or the infliction of great bodily injury."

Pursuant to section 1170.3 the Judicial Council adopted a number of rules, including rule 425 of the California Rules of Court regarding criteria for deciding between consecutive and concurrent sentences.[5] The decision

---

[5]Rule 425 states: "Criteria affecting the decision to impose consecutive rather than concurrent sentences include: [¶] (a) Facts relating to the crimes, including whether or not: [¶] (1) The crimes and their objectives were predominantly independent of each other. [¶] (2) The crimes involved separate acts of violence or threats of violence. [¶] (3) The crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior. [¶] (4) Any of the crimes involved multiple victims. [¶] (5) The convictions for which sentences are to be imposed are numerous. [¶] (b) Any circumstances in aggravation or mitigation." Circumstances to consider in aggravation and mitigation are set forth in rules 421 and 423.

All references to rules in this opinion are to the California Rules of Court.

to sentence a defendant under section 667.6, subdivision (c) rather than section 1170.1 is essentially a decision concerning consecutive sentencing, and the factors listed in rule 425 are relevant to it.[6] (See *People* v. *Karsai* (1982) 131 Cal.App.3d 224, 238 [182 Cal.Rptr. 406].) Nothing in section 1170.3 calls for an additional rule for consecutive sentencing under section 667.6, subdivision (c). When the Legislature added section 667.6 in 1979, it did not amend section 1170.3 to require separate criteria for sentencing under subdivision (c) of section 667.6. We therefore presume that the Legislature intended the existing criteria to cover sentencing under section 667.6, subdivision (c). (See *Estate of McDill* (1975) 14 Cal.3d 831, 837-839 [122 Cal.Rptr. 754, 537 P.2d 874].) Moreover, it would be extremely difficult to formulate separate and distinct criteria from those already set forth in rule 425. (See *People* v. *Wilson* (1982) 135 Cal.App.3d 343, 353-354 [185 Cal.Rptr. 498].)

## C. *Statement of Reasons*

■ Defendant also contends that his sentence is invalid because the trial court failed to separately state its reasons for imposing consecutive sentences pursuant to section 667.6, subdivision (c). The trial court is required to state "the reasons for its sentence choice on the record at the time of sentencing." (§ 1170, subd. (c).) Defendant correctly contends that the decision to sentence under section 667.6, subdivision (c) is a "sentence choice" for which reasons must be stated. (See also rule 405(f).)

Although with respect to section 667.6 there has been general agreement that some statement of reasons is required, there has been a divergence of views in Court of Appeal decisions regarding the nature and specificity of the reasons that must be given. Some of the confusion has been the result of disagreement about the relationship between sections 1170.1 and 667.6, subdivision (c). Our previous discussion of the discretionary nature of section 667.6, subdivision (c) listed the choices to be made. In deciding whether to sentence consecutively or concurrently, and if consecutively, whether to do so under section 1170.1 or under the harsher full term provisions of subdivision (c) of section 667.6, the court is obviously making separate and distinct decisions.[7] A decision to sentence under section 667.6, subdivision (c) is an additional sentence choice which requires a statement of reasons separate from those justifying the decision merely to sentence consecutively.

---

[6]Our reference to rule 425 encompasses rules 421 and 423 as well since rule 425 essentially incorporates them by reference.

[7]A substantial difference in time is involved. Had defendant here been sentenced consecutively under section 1170.1 rather than 667.6, subdivision (c) the total term would have been 12.66 years rather than 24 years.

This does not mean that the reasons justifying full term consecutive sentencing under section 667.6, subdivision (c) must necessarily be different than those used to justify the imposition of consecutive sentences under section 1170.1. The criteria listed in rule 425—which, as noted, incorporate those of rules 421 and 423—apply to both decisions and cover all degrees and nuances of depravity. What is required is an identification of the criteria which justify use of the drastically harsher provisions of section 667.6, subdivision (c). ▮▮ ▮▮▮ ▮ The crucial factor, in our view, is that the record reflect recognition on the part of the trial court that it is making a separate and additional choice in sentencing under section 667.6, subdivision (c).[8]

The ideal method of proceeding would be for the trial court first to decide generally between concurrent and consecutive terms, following the criteria listed in rule 425. Once the court has decided to sentence a defendant to consecutive terms and has stated its reasons therefor, it then must decide whether the consecutive terms should be under the principal/subordinate scheme of section 1170.1 or under the full and separate term scheme of section 667.6, subdivision (c). If the latter is chosen, the reasons therefor should be stated for the record. This decision, of course, should be made very carefully, for the Legislature obviously intended by the alternative

---

[8]Since our holding—that section 667.6, subdivision (c) gives the trial court discretion to sentence under it or under section 1170.1—relates only to sentencing and will not require any retrials, it shall have full retroactive effect. Defendants are entitled to sentencing decisions made in the exercise of the "informed discretion" of the sentencing court. (See *United States* v. *Tucker* (1972) 404 U.S. 443, 447 [30 L.Ed.2d 592, 596, 92 S.Ct. 589]; *Townsend* v. *Burke* (1948) 334 U.S. 736, 741 [92 L.Ed. 1690, 1693, 68 S.Ct. 1252].) A court which is unaware of the scope of its discretionary powers can no more exercise that "informed discretion" than one whose sentence is or may have been based on misinformation regarding a material aspect of a defendant's record. (See *People* v. *Ruiz* (1975) 14 Cal.3d 163, 168 [120 Cal.Rptr. 872, 534 P.2d 712].)

Where a court may have been influenced by an erroneous understanding of the scope of its sentencing powers, habeas corpus is a proper remedy to secure reconsideration of the sentence imposed. (*People* v. *Tenorio* (1970) 3 Cal.3d 89, 95; fn. 2 [89 Cal.Rptr. 249, 473 P.2d 993].) *In re Hernandez* (1966) 64 Cal.2d 850, 852 [51 Cal.Rptr. 915, 415 P.2d 803].) Therefore, defendants sentenced to consecutive terms pursuant to section 667.6, subdivision (c), whose judgments have become final, may seek relief by petition for writ of habeas corpus alleging such sentencing and the failure of the sentencing court to exercise discretion in determining whether to sentence under section 667.6, subdivision (c) or section 1170.1. The petition should be filed in the sentencing court.

If the record demonstrates on its face that the sentencing court was aware of its statutory authority to sentence under section 1170.1, it may be presumed that the court did exercise its discretion in failing to do so, and the petition may be summarily denied. The petition may also be summarily denied if the record reflects that the sentencing court clearly indicated that it would not have exercised discretion to sentence under section 1170.1 even if it had been aware that it had such discretion.

If summary denial is not warranted, the court shall proceed to resentence the defendant, having in mind the procedures suggested in *In re Cortez* (1971) 6 Cal.3d 78 [98 Cal.Rptr. 307, 490 P.2d 819].

language in section 667.6, subdivision (c) that this more punitive provision be reserved for the more serious sex offenders. (See *People* v. *Wilson, supra,* 135 Cal.App.3d 343, 353.)

Turning to the record in the present case, we conclude that the statement of reasons given by the trial court is inadequate. Although the factors listed are relevant to the choice between concurrent and consecutive sentences under rule 425, there is no indication why the more punitive provisions of section 667.6, subdivision (c) were chosen over those in section 1170.1.

■ The parties agree that defendant's admission of the prior enhancing felony conviction was invalid because of inadequate advisement and waiver of defendant's constitutional rights. (*In re Foss* (1974) 10 Cal.3d 910, 930 [112 Cal.Rptr. 649, 519 P.2d 1073]; *In re Yurko* (1974) 10 Cal.3d 857, 863-864 [112 Cal.Rptr. 513, 519 P.2d 516].) Defendant must be given a limited trial on the issue of whether he suffered the alleged prior felony conviction before it may be used to enhance his sentence pursuant to section 667.5. (*People* v. *Hickey* (1980) 109 Cal.App.3d 426, 433-434, 442 [167 Cal.Rptr. 256]; *People* v. *Hernandez* (1979) 100 Cal.App.3d 637, 642-643, 647 [160 Cal.Rptr. 607].)

The judgment of conviction is affirmed, and the matter is remanded for a limited trial on the issue of the prior conviction and for resentencing.

Bird, C. J., Mosk, J., Richardson, J., Broussard, J., Reynoso, J., and Grodin, J., concurred.

Appellant's petition for a rehearing was denied September 29, 1983.