[No. F042317. Fifth Dist. May 20, 2004.]

THE PEOPLE, Plaintiff and Respondent, v.
VICTOR MACIEL GARCIA, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts 1 and 3.

988

## COUNSEL

Philip M. Brooks, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Jo Graves, Assistant Attorney General, Robert P. Whitlock and Kelly C. Fincher, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**GOMES, J.—**

## FACTUAL AND PROCEDURAL BACKGROUND

Two eyewitnesses identified 17-year-old Victor Maciel Garcia as the person who fired several shotgun blasts during a gang altercation in an alley. A pellet from one of those blasts apparently hit a 12-year-old girl in the leg and caused slight bleeding. An information charged him with, inter alia, attempted willful, deliberate, and premeditated murder and assault with a firearm and included, inter alia, criminal street gang, personal firearm use, and personal and intentional firearm discharge allegations. (Pen. Code, §§ 664, 187, subd. (a), 245, subd. (a)(2), 186.22, subd. (b)(1), 12022.5, subd. (a)(1), 12022.53, subd. (c).[1]) A jury found him guilty of those crimes and found those allegations true.

Before sentencing, Garcia requested a transfer from criminal court to juvenile court on the ground that at the preliminary hearing the magistrate did not find reasonable cause to believe he was subject to the discretionary direct file provisions of Proposition 21.[2] (Welf. & Inst. Code, § 707, subd. (d)(4).[3]) In opposition, the prosecutor argued that Garcia waived any jurisdictional irregularity by failing to object and, in the alternative, that the magistrate's findings of probable cause to believe he committed offenses authorizing a Proposition 21 discretionary direct file were equivalent to the missing finding. (Pen. Code, §§ 664, 187, subd. (a), 245, subd. (a)(2), 186.22, subd. (b)(1); Welf. & Inst. Code, § 707, subds. (b)(12), (b)(13), (d)(2)(C)(ii).) The court denied the request.[4]

---

[1] Later statutory amendments made nonsubstantive changes to both firearm enhancement statutes. (Stats. 2003, ch. 468, § 22; Stats. 2002, ch. 126, §§ 3, 4.)

[2] See the Gang Violence and Juvenile Crime Prevention Act of 1998. (Initiative Measure, Ballot Pamp., Primary Elec. (Mar. 7, 2000) (Proposition 21).)

[3] Welfare & Institutions Code, § 707, subdivision (d)(4): "In any case in which the district attorney or other appropriate prosecuting officer has filed an accusatory pleading against a minor in a court of criminal jurisdiction pursuant to the provisions of this subdivision, the case shall then proceed according to the laws applicable to a criminal case. In conjunction with the preliminary hearing as provided for in Section 738 of the Penal Code, the magistrate shall make a finding that reasonable cause exists to believe that the minor comes within the provisions of this subdivision. If reasonable cause is not established, the criminal court shall transfer the case to the juvenile court having jurisdiction over the matter."

[4] That ruling is not at issue on appeal.

The court sentenced Garcia to an aggregate 45-years-to-life term in state prison—15 years to life for attempted willful, deliberate, and premeditated murder consecutive to 20 years for the personal and intentional firearm discharge enhancement and 10 years for the criminal street gang enhancement—and stayed all other terms. Later, the court recalled the sentence and held a hearing on Garcia's request for a juvenile disposition. (Pen. Code, §§ 1170, subd. (d), 1170.19, subd. (a)(4); Welf. & Inst. Code, § 707, subd. (d)(6).)

At the hearing, the court characterized as "kind of a long sentence for somebody [his] age" Garcia's 45-to-life term, as "[p]robably" acceptable the 18-year term his counsel had tried to no avail to negotiate, and as inappropriate the notion "he be released at the time he's 25 years, in seven years." The court noted that Garcia returned to the United States after his deportation because "he liked the lifestyle of the gang," that he increased his involvement in illegal gang activities after his return, and that he even shot at someone "to prove he was faithful to the gang." On that record, the court imposed the identical adult sentence as before to send the message that having "the younger people pull the trigger" leads to no less harsh punishment than if "the 22-year-old gang members" pull the trigger.

## DISCUSSION

### 1. Present Recollection Refreshed[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### 2. *Juvenile Disposition*

Garcia argues a remand for resentencing is necessary for the court to receive in evidence, read, and consider a social study by the probation officer before the exercise of discretion to impose an adult sentence or order a juvenile disposition. The Attorney General argues the court lacks that discretion and, even if the court had that discretion, a result more favorable to Garcia would not be reasonably probable since the court already considered and rejected a juvenile disposition.

Several questions about whether a court has discretion to order a juvenile disposition after a Proposition 21 discretionary direct file are pending before the Supreme Court. (See *People v. Thomas* (2003) 109 Cal.App.4th 1520

---

[*]See footnote, *ante*, page 987.

[1 Cal.Rptr.3d 233], review granted Oct. 1, 2003, S118052; *People v. Chacon* (2003) 109 Cal.App.4th 1537 [1 Cal.Rptr.3d 223], review granted Oct. 1, 2003, S117879.) Here, on a record showing the court's consideration on the merits of Garcia's request for a juvenile disposition, we assume arguendo the court has that discretion.[7]

The narrow question the record here poses is whether Penal Code section 1170.19, subdivision (a)(4) requires the court to receive in evidence, read, and consider a social study by the probation officer prior to imposing an adult sentence on a Proposition 21 discretionary direct file. The language of the statute answers that question in the negative:

"Subject to the knowing and intelligent consent of both the prosecution and the person being sentenced pursuant to this section, the court may order a juvenile disposition under the juvenile court law, in lieu of a sentence under this code, upon a finding that such an order would serve the best interests of justice, protection of the community, and the person being sentenced. *Prior to ordering a juvenile disposition*, the court shall cause to be received into evidence a social study by the probation officer, prepared pursuant to Section 706 of the Welfare and Institutions Code, and shall state that the social study made by the probation officer has been read and considered by the court." (Pen. Code, § 1170.19, subd. (a)(4), italics added.)

Penal Code section 1170.19, subdivision (a)(4) incorporates by reference Welfare and Institutions Code section 706, which requires the court to receive in evidence, read, and consider a social study by the probation officer after a Welfare and Institutions Code section 601 or 602 finding: "*After finding that a minor is a person described in Section 601 or 602*, the court shall hear evidence on the question of the proper disposition to be made of the minor. The court shall receive in evidence the social study of the minor made by the probation officer and any other relevant and material evidence that may be offered, including any written or oral statement offered by the victim, the parent or guardian of the victim if the victim is a minor, or if the victim has died or is incapacitated, the victim's next of kin, as authorized by subdivision (b) of Section 656.2. In any judgment and order of disposition, the court shall state that the social study made by the probation officer has been read and that the social study and any statement has been considered by the court." (Welf. & Inst. Code, § 706, italics added.)

Here, the prosecutor's choice of a Proposition 21 discretionary direct file necessarily obviated a "finding that [Garcia] [was] a person described in

---

[7] This case does not present, and we do not address, the issue of whether the statutory requirement of the prosecutor's consent to a juvenile disposition violates the separation of powers doctrine. (See Pen. Code, § 1170.19, subd. (a).) The court considered Garcia's request on the merits without adjudicating that issue. On appeal, neither party raises that issue.

Section 601 or 602." (Welf. & Inst. Code, § 706; see Proposition 21.) Since Welfare and Institutions Code section 706 was adopted and amended before Proposition 21 and was neither amended by or after Proposition 21, the statute cannot possibly, and indeed does not, impose a requirement that the court receive in evidence, read, and consider a social study by the probation officer prior to imposing an adult sentence on a Proposition 21 discretionary direct file. (Welf. & Inst. Code, § 706; added by Stats. 1961, ch. 1616, § 2, p. 3459; amended by Stats. 1976, ch. 1068, § 50, p. 4790; Stats. 1995, ch. 234, § 3.) Again, the language of the statute answers in the negative the question before us.

■ The "fundamental task of statutory construction is to 'ascertain the intent of the lawmakers so as to effectuate the purpose of the law.' " (*People v. Cruz* (1996) 13 Cal.4th 764, 774–775 [55 Cal.Rptr.2d 117, 919 P.2d 731].) If the language is clear, the plain meaning of the words is determinative, and there is ordinarily no need to look beyond the statute itself. (*People v. Benson* (1998) 18 Cal.4th 24, 30 [74 Cal.Rptr.2d 294, 954 P.2d 557].) ■ Since the language of both Penal Code section 1170.19, subdivision (a)(4) and Welfare and Institutions Code section 706 is clear that the court has no duty to receive in evidence, read, and consider a social study by the probation officer prior to imposing an adult sentence on a Proposition 21 discretionary direct file, we have no need to look beyond the statutory language.

"Defendants are entitled to sentencing decisions made in the exercise of the 'informed discretion' of the sentencing court." (*People v. Belmontes* (1983) 34 Cal.3d 335, 348, fn. 8 [193 Cal.Rptr. 882, 667 P.2d 686], quoting *United States v. Tucker* (1972) 404 U.S. 443, 447 [30 L.Ed.2d 592, 92 S.Ct. 589]; see *Townsend v. Burke* (1948) 334 U.S. 736, 741 [92 L.Ed. 1690, 68 S.Ct. 1252]; *People v. Austin* (1981) 30 Cal.3d 155, 160–161 [178 Cal.Rptr. 312, 636 P.2d 1].) Here, the court carefully considered facts about Garcia and his crimes and thoughtfully evaluated criminal and juvenile dispositions alike before exercising informed discretion to impose an adult sentence. On that record, the court did not err in making that sentencing decision without having received in evidence, read, and considered a social study by the probation officer.

3. Sentence Modification*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante*, page 987.

## DISPOSITION

We affirm the judgment and remand to the superior court to modify the judgment by striking not only the 15-to-life term for attempted willful, deliberate, and premeditated murder but also the consecutive 10-year criminal street gang enhancement and by substituting a term of life with possibility of parole and a 15-year minimum eligible parole date. The superior court shall issue and forward to the appropriate persons an amended abstract of judgment reflecting those changes. Garcia has no right to be present at those proceedings. (See *People v. Price* (1991) 1 Cal.4th 324, 407–408 [3 Cal.Rptr.2d 106, 821 P.2d 610].)

Harris, Acting P. J., and Dawson, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 15, 2004.